# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **CHRISTOPHER WAYNE WEBB,** )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>**JOE ALLBAUGH, DOC Director,** )<br>)<br>Respondent. ) | **Case No. CIV 13-265-RAW-KEW** |

## OPINION AND ORDER

This matter is before the Court on Petitioner's amended petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 and the supplement to the amended petition (Dkts. 21, 22, 27). Petitioner, a pro se inmate currently incarcerated at Lawton Correctional Facility in Lawton, Oklahoma, attacks his conviction and 30-year sentence in Bryan County District Court Case No. CF-2009-387 for Rape by Instrumentation, After Conviction of Two or More Felonies. He sets forth the following grounds for relief:

I. Insufficient evidence.

II. Denial of a speedy trial.

III. Excessive sentence.

The respondent concedes that Petitioner has exhausted his state court remedies for the purpose of federal habeas corpus review. The following records have been submitted to the court for consideration in this matter:

A. Petitioner's direct appeal brief.

B. The State's brief in Petitioner's direct appeal.

C. Summary Opinion affirming Petitioner's judgment and sentence. *Webb v. State*, No. F-2012-101 (Okla. Crim. App. May 3, 2013).

D. Transcripts and state court record.

**Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act, federal habeas corpus relief is proper only when the state court adjudication of a claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

**Ground I: Sufficiency of the Evidence**

Petitioner was convicted of the rape by instrumentation of A.S., a 14-year-old girl. He alleges the State failed to introduce sufficient evidence of the crime, and in particular, the victim's testimony was insufficient to sustain his conviction. On direct appeal the Oklahoma Court of Criminal Appeals (OCCA) denied relief on this claim:

> [W]e find that although the evidence presented against Webb at trial was not overwhelming, it was sufficient for a reasonable trier of fact to find beyond a reasonable doubt that Webb committed the crime of rape by instrumentation. *Head v. State*, 146 P.3d 1141, 1144 (2006). *See also Spuehler v. State*, 709 P.2d 202, 203-04 (Okla. Crim. App. 1985).

*Webb v. State*, No. F-2012-101, slip op. at 2 (Okla. Crim. App. May 3, 2013).

"Sufficiency of the evidence can be considered to be a mixed question of law and fact." *Case v. Mondagon*, 887 F. 2d 1388, 1392 (10th Cir. 1989), *cert. denied*, 494 U.S. 1035

2

(1990). In federal habeas review of a state court conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

The Supreme Court repeatedly has emphasized the deference the reviewing court owes to the trier of fact and "the sharply limited nature of constitutional sufficiency review." *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson*, 443 U.S. at 319). "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. The court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993) (citing *United States v. Edmondson*, 962 F.2d 1535, 1548 (10th Cir. 1992)). "To be sufficient, the evidence supporting the conviction must be substantial; that is, it must do more than raise a mere suspicion of guilt." *Beachum v. Tansy*, 903 F.2d 1321, 1332 (10th Cir.), *cert. denied*, 498 U.S. 904 (1990) (citing *United States v. Troutman*, 814 F.2d 1428, 1455 (10th Cir. 1987)).

A.S., the victim, testified that Petitioner was her mother's ex-boyfriend, and during the spring and summer months of 2009, when she was 14 years old, she often hung out and used methamphetamine and marijuana with him (Tr. 71-73, 88-89, 106). A.S. and Petitioner would get together and use drugs at the homes of other people, including the home of Shannon Billey in Durant, Oklahoma (Tr. 73-74). A.S. first denied that Petitioner had

3

touched her or that she woke up in bed with him, but after a recess, she reluctantly changed her story (Tr. 75, 85). She then recalled her preliminary hearing testimony in which she testified that she woke up one morning with Petitioner's fingers in her vagina (Tr. 76-77, 85). She also testified that her preliminary hearing testimony was true, and the act occurred in the spring or summer of 2009 (Tr. 85). She was at Shannon Billey's house when the incident occurred (Tr. 86).

Brandy Webb, Petitioner's estranged wife from whom he was separated, testified that in the late spring to summer of 2009, she learned from Petitioner that he was alone at a home with A.S. (Tr. 99-103). Ms. Webb called law enforcement in Bryan County to report this information (Tr. 102-03).

On June 19, 2009, David Cathey, an investigator with the Bryan County District Attorney's Office, went to the home of Melissa Wright-Sanchez, A.S.'s mother, and spoke to Wright-Sanchez about the matter (Tr. 107-08, 113-14). Investigator Cathey also spoke with A.S. who disclosed the allegations against Petitioner (Tr. 114-15). A.S. then told her mother what she had disclosed to Cathey (Tr. 114-15). Cathey arranged for a forensic interview of A.S. on June 22, 2009, at the ABC House, a facility dedicated to interviewing children who are crime victims (Tr. 115-16).

Ms. Wright-Sanchez told Petitioner about A.S.'s allegations (Tr. 112). Petitioner then took Ms. Wright-Sanchez to Dallas, where they used drugs, causing Wright-Sanchez and A.S. to miss their appointment at the ABC House (Tr. 108, 112). A forensic interview of A.S. eventually was completed, resulting in the removal of all of Wright-Sanchez's children from the home (Tr. 109, 116).

4

Shannon Miller testified that she was Petitioner's girlfriend from 1989 to 1994 or 1995 (Tr. 128). Petitioner lived with Ms. Miller and her son, her daughter C.O., and her niece A.A. (Tr. 129-30). During that time, Petitioner stayed with the children while Ms. Miller was at work (Tr. 134).

C.O., Sharon Miller's daughter, testified she was 11 years old when she woke up one night with Petitioner's hands in her panties (Tr. 137-38). This happened a couple of times, but it progressed to her sitting on his lap, then to her taking off her panties and sitting on him, and finally to her losing her virginity (Tr. 138-39). C.O. told her friends what was happening, and Petitioner was arrested, but C.O. recanted when Petitioner was able to communicate with her and threatened to kill her, her mother, and her dog (Tr. 138-41). After C.O. recanted, Petitioner's behavior resumed, and he rewarded her silence with bicycle rides, ice cream, and allowing her to play at a friend's house (Tr. 141-42). As C.O. grew older, Petitioner rewarded her silence with marijuana (Tr. 141-42).

A.A. testified she was 11 years old when she came to live with her aunt Sharon Miller, A.A.'s cousin, and Petitioner (Tr. 151-52). Petitioner had A.A. sit on his lap while he moved around, and he touched A.A. on her private area and had her stroke him (Tr. 153). Petitioner threatened to kill A.A., her mother, her brother, and her friend, if she told anyone (Tr. 154-55). A.A. was 12 years old when she told her best friend what was happening (Tr. 153-54). The friend made A.A. tell the school counselor, and A.A. moved out of the home and returned to California to live with her mother (Tr. 153).

Shannon Billey testified on Petitioner's behalf that during the spring and summer of 2009, A.S. visited Petitioner whenever Petitioner was at Shannon's house (Tr. 172-74).

5

Billey claimed A.S. tried to flirt with Petitioner, but Shannon saw no indication that Petitioner took A.S. seriously or had any interest in her (Tr. 174-75). Shannon also testified that A.S. spent the night at her house one night during that time, and when A.S. helped Shannon cook breakfast the next morning, nothing seemed out of the ordinary (Tr. 175-76).

Brandy Billey, Petitioner's cousin and A.S.'s stepmother at the time of the alleged incident, testified that A.S. told her she was tired of the court system and the DHS, that she did not realize her mother would be in trouble, and if the charges against her mother were dropped, she would not testify (Tr. 179-81). Brandy also testified that A.S. told her that Petitioner did not touch her, but Brandy did not tell the authorities that A.S. had recanted (Tr. 182, 189).

Solomon Pedraza, Shannon Billey's ex-boyfriend, testified he was living with Shannon in the spring and summer of 2009 (Tr. 192). A.S. came to Shannon's house whenever Petitioner was visiting, and they always were happy to see each other (Tr. 193). One night around April 2009, A.S. spent the night, and Mr. Pedraza had to ask her and Petitioner to be quieter, because they were "carrying on and talking real loud" in the living room (Tr. 194-95). Mr. Pedraza assumed A.S. had left when it became quiet, but when he got up the next morning, he saw her and the defendant talking in the bedroom by the kitchen (Tr. 194). The bedroom door was slightly open, because it would not lock (Tr. 195).

To determine whether there was sufficient evidence presented at trial to sustain petitioner's conviction, the Court first must look to Oklahoma law for the elements required for the crime. *Jackson*, 443 U.S. at 324 n.16; *see also Torres v. Mullin*, 317 F.3d 1145, 1152 (10th Cir.), *cert. denied*, 540 U.S. 1035 (2003). The applicable statute for rape by

instrumentation provides:

> No person may be convicted of rape by instrumentation in the second degree unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:
>
> First, penetration of the anus or vagina;
>
> Second, of any other person;
>
> Third, by an inanimate object, or by a part of the human body other than the penis;
>
> Fourth, without her consent;
>
> Fifth, Where the victim is under the age of sixteen (16) years.
>
> Any sexual penetration, however slight, is sufficient to complete the crime of rape by instrumentation.
>
> OUJI-CR 4-127

(Dkt. 33-6 at 149; Okla. Stat. tit. 21, § 1114(A)(5) (2008)).

After careful review, the court finds the evidence was sufficient under the standard of *Jackson v. Virginia*. The testimony of A.S. satisfied the elements of the crime. Furthermore, Petitioner's actions in taking Ms. Wright-Sanchez to Dallas, where she used drugs, resulted in A.S. missing her forensic interview appointment at the ABC house. This circumstantial evidence that Petitioner caused the appointment to be missed is further evidence of his guilt.

The Court further finds the OCCA's decision on this claim was not contrary to, or an unreasonable application of, Supreme Court law, and the decision was not based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Plaintiff's claim that the

7

evidence was insufficient fails.

Petitioner also argues some very cursory claims that were not presented on direct appeal. These claims are unexhuasted and would be procedurally barred, if Petitioner were to present the claims to the state courts. The unexhausted claims include allegations that A.S. was badgered and threatened to obtain her accusations and testimony, the trial court failed to instruct on impeachment, the spousal privilege was denied, and improper introduction of other crimes. He also claims A.S.'s testimony had no indicia of reliability, and the prosecutor was allowed to present highly inflammatory testimony by irrelevant witnesses. Petitioner further complains that Investigator Cathey had ill will against him, having implicated Petitioner in previous crimes. Petitioner, however, fails to cite to the record or to any authority for these claims.

This Court finds these cursory claims are unexhausted and subject to an anticipatory procedural bar, because any attempt to present the claims in state court in a post-conviction application would be procedurally barred under state law. *See Woodruff v. State,* 910 P.2d 348, 350 (Okla. Crim. App. 1996) ("Issues which were not raised on direct appeal, but could have been are waived."). Petitioner also has failed to even allude to, much less establish, cause and prejudice for the omissions of these claims in his direct appeal. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In addition, Petitioner does not claim he is factually innocent of the crime, but instead claims only that he is legally innocent, based on these cursory claims. Therefore, the cursory claims are subject to an anticipatory procedural bar.

**Ground II: Speedy Trial**

Petitioner next claims he was denied a speedy trial. The OCCA found there was no

constitutional violation:

> [W]e find that Webb was not deprived of his constitutional right to a speedy trial. When reviewing a claim of the denial of the right to a speedy trial, we apply the four balancing factor established by the United States Supreme Court in *Barker v. Wingo*, 407 US. 541, 530 (1972): (1) length of the delay; (2) reason for the delay; (3) the defendant's assertion of his right, and (4) prejudice to the defendant. These are not absolute factors, but are balanced with other relevant circumstances in making a determination. *Ellis v. State*, 76 P.3d 1131, 1136. Although the length of the delay weighed against the State, the remaining three of the four *Barker* factors weigh against a finding that Webb was denied a speedy trial, this proposition requires no relief.

*Webb*, No. F-2012-101, slip op. at 1-2.

The record shows that Petitioner was charged with rape by instrumentation on July 14, 2009, and he appeared in court on July 23, 2009, at which time his bond was set at $250,000 (O.R. 1,6). His jury trial was held on January 25, 2012, approximately 2-1/2 years later. The reason for the delay is important, because "different weights should be assigned to different reasons." *Barker*, 407 U.S. at 531.

On October 7, 2011, Petitioner filed a state petition for a "writ of habeas corpus for dismissal," concerning the issue of delay in the proceedings (O.R. 57-63) (Dkt. 33-6). After reviewing the entire court file on the case, the trial court denied the petition on November 3, 2011, setting forth thorough Findings of Fact and Conclusions of Law about the reasons for the delay in Case No. CF-2009-387:

> The State of Oklahoma filed the information in this case on or about July 14, 2009, and the felony warrant was issued on the same day.
>
> Also, on or about July 14, 2009, the State filed a separate information in CF-09-386 (charging the Defendant with various felonies).
>
> The Defendant was arrested pursuant to an arrest warrant on or about July 22,

9

2009.

The Defendant appeared for initial appearance on or about July 23, 2009. The Court found the Defendant to be indigent at his initial appearance, and Michael Haggerty, II, Esq., was appointed as the Defendant's attorney. Also, on or about July 23, 2009, this case was set for preliminary hearing on October 6, 2009.

On or about August 6, 2009, the State filed a separate information on CF-09-434. No warrant was issued in that case, because the Defendant was already in custody in lieu of bond.

On or about August 18, 2009, the Oklahoma Indigent Defense System (OIDS) assigned Larry Monard, Esq. to represent the Defendant.

On or about August 27, 2009, the State filed a motion to continue the preliminary hearing, which was by agreement with counsel for the Defendant. The Honorable Trace Sherrill, Special Judge, granted the motion to continue the preliminary hearing, and reset the preliminary hearing for November 30, 2009.

Judge Sherrill heard the preliminary hearing in this case (and in CF-09-386) on or about November 30, 2009, and the Defendant was ordered held for trial.

The Defendant appeared before the undersigned for formal arraignment on or about December 15, 2009, and the Court entered a not guilty plea on behalf of the Defendant (because he stood mute as to entering a formal plea). Also on that date, the Defendant waived his right to a jury trial on the Court's January/February 2010 jury term. The matter was then set on the Court's March 22, 2010, disposition docket.

On or about March 22, 2010, the Defendant appeared before the undersigned and the [sic] requested a jury trial. The case was set on the Court's April/May 2010 jury term.

On or about April 27, 2010, the defense filed a motion to continue the case from the April/May 2010 jury docket, and the State did not object.

On or about May 20, 2010, the Honorable Rocky Powers, Associate District Judge, entered a minute order striking the case from the April/May 2010 jury

docket, and set the matter for the Court's next disposition docket on August 16, 2010.

On or about August 16, 2010, the Defendant again appeared before the undersigned and requested a jury trial. The State elected to proceed first to jury trial in CF-09-386. The Court set that case on the September/October 2010 jury term.

On or about September 16, 2010, the Defendant appeared before Judge Powers, and he advised Judge Powers that he intended to represent himself at jury trial. Further, the Defendant asked Judge Powers to continue the matter from the September/October 2010 jury term. Judge Powers granted the Defendant's request for continuance, and set the matter on the Court's December 13, 2010, disposition docket.

On or about December 13, 2010, the State, again, elected to proceed first to jury trial in CF-386.

Also, on or about December 13, 2010, Larry Monard, Esq., filed a request to be allowed to withdraw as the Defendant's legal advisor for the reason that the Defendant "filed suit in the Oklahoma Supreme Court on the 7th of December 2010 against Larry Monard and the Oklahoma Indigent Defense System for allegedly violating his constitutional rights." Mr. Monard referenced cause number 108981 that was filed with the Supreme Court, in which case the Supreme Court refused to assume jurisdiction. Also, on or about December 13, 2010, Judge Powers allowed Mr. Monard to withdraw as the Defendant's legal advisor. Further, on that date, Judge Powers directed OIDS to provide the Defendant alternate standby counsel.

On or about January 11, 2011, Charles Timothy Laughlin, the Chief of the Non-Capital Trial Division for OIDS submitted a request to Judge Powers to reconsider his decision wherein he directed OIDS to provide alternate standby counsel.

On or about January 11, 2011, the Defendant again appeared before Judge Powers, and Judge Powers again advised the Defendant of his right to counsel. Judge Powers then appointed Whitney Kerr, Esq., as the Defendant's new standby counsel.

On or about January 14, 2011, Judge Powers granted the Defendant's request

to strike the case from the January/February 2100 [sic] jury term, without objection from the State. Judge Powers then set a jury trial date of April 25, 2011.

On or about April 25, 2011, the Defendant filed a pro se "Motion for Continuance and (or) Demurrer." In the Defendant's pro se motion, he referenced various federal claims he has against Mr. Monard, the Bryan County District Attorney's Office, District Attorney Emily Redman, Assistance District Attorney Julie Naifeh and Judge Powers. Judge Powers granted the Defendant's request for a continuance, and then disqualified himself.

On or about August 9, 2011, the Defendant filed a pro se notice that he was seeking a "writ of habeas corpus relief" from the "Federal Court."

On or about August 18, 2011, CF-09-386 was set for a jury trial on the Court's September/October 2011 jury term (specifically on September 26, 2011).

On or about September 23, 2011, the Defendant appeared before the undersigned for a pre-trial hearing in CF-09-386. The Defendant was obviously visibly injured at the pre-trial hearing, which he alleged occurred at the hands of other inmates. The Court continued the Defendant's September 26, 2011, jury trial until September 27, 2011, to allow the Defendant to be medically observed and "cleared" for trial. The Court was notified shortly thereafter that the Defendant's medical condition was such that it was appropriate to proceed to jury trial on September 27, 2011.

Also, on or about September 23, 2011, at the Defendant's appearance before the undersigned, he again tried to put off his case in CF-09-386 when referring to one of his various "writs" he has pursued in federal court he asked the undersigned, "That wouldn't allow me a stay of proceedings until a ruling has come back in that court?" That request for a "stay of proceedings" was denied.

On or about September 27, 2011, the Defendant appeared before the undersigned for a jury trial in CF-09-386. The jury found the Defendant guilty of one felony count, and recommended that he serve a term of five years in the Oklahoma Department of Corrections. Also on or about that date. the Defendant waived his right to a pre-sentence report, and the Court sentenced him instanter in accordance with the jury's verdict and recommendation.

On or about October 11, 2011, the Defendant filed, pro se, the instant request for "Writ of Habeas Corpus for Dismissal." In the Defendant's petition, he alleged that he was the victim of various "speedy trial" violations.

*State v. Webb*, No. CF-09-387, slip op. at 1-4 (Bryan County Dist. Ct. Nov. 3, 2011) (O.R. 75-78) (Dkt. 33-6). The trial court's factual findings are entitled to a presumption of correctness, unless Petitioner produces clear and convincing evidence to rebut the presumption. 28 U.S.C. § 2254(e)(1).

Citing *Barker* and Oklahoma case law, the trial court also entered Conclusions of Law in its denial of the state petition for a writ of habeas corpus:

> As this Court previously held in CF-09-386, wherein the Defendant filed a similar request, clearly, and almost singularly, the Defendant is responsible for the delay in his cases being presented to a jury for trial. Specifically, the Defendant has used scheming and manipulation to put off the inevitable presentation of this matter to a jury by his frivolous filing with this Court, the Oklahoma Supreme Court, the Oklahoma Court of Criminal Appeals and the Federal Courts . . . and by his efforts to remove his legal counsel and the judge previously assigned to this case. The Defendant has continued to file various meritless motions, writs and other rambling documents that appear to be designed to portray himself as a victim. However, these documents contain virtually nothing of any legal relevance, and do nothing but waste the Court's time. Certainly, this case will not be dismissed because of the Defendants's obvious obstructionist tactics, nor will it be dismissed because of his flagrant misuse of courts at almost all levels.
>
> For the reasons set forth above, the Defendant's "Motion to Dismiss" is **DENIED**.

*Webb*, No. CF-2009-387, slip op. at 4 (Bryan County Dist. Ct. Nov. 3, 2011) (emphasis in original); (O.R. 78; Dkt. 33-6).

After careful review, this Court finds the OCCA's analysis of this claim was consistent with Supreme Court law, and the decision was not based on an unreasonable

13

determination of the facts. *See* 28 U.S.C. § 2254(d). Furthermore, this Court agrees that the length of the delay weighed against the State, but Petitioner attempted numerous legal tactics to delay or stop his prosecution. *See Webb*, No. F-2012-101, slip op. at 2. He sued the trial judge and the entire indigent defense system, resulting in recusal and disqualifications. In addition, he continually delayed the progress of the case by filing motions to continue the case.

> Perhaps most important is whether the defendant has actively asserted his right to a speedy trial. This is not satisfied merely by moving to dismiss after the delay has already occurred. Such a motion could be, indeed may well be, strategic. The question, instead, is whether the defendant's behavior during the course of litigation evinces a desire to go to trial with dispatch. *See Barker*, 407 U.S. at 536 ("[B]arring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial."); *United States v. Dirden*, 38 F.3d 1131, 1138 (10th Cir.1994) (finding that the third factor weighed against a defendant who moved for a continuance and acquiesced when the trial date was vacated twice); *United States v. Tranakos*, 911 F.2d 1422, 1429 (10th Cir. 1990) ("We are unimpressed by a defendant who moves for dismissal on speedy trial grounds when his other conduct indicates a contrary desire.").

*United States v. Batie*, 433 F.3d 1287, 1291 (10th Cir.), *cert. denied*, 548 U.S. 908 (2006). The record shows that on August 9, 2011, Petitioner notified the trial court that he had filed federal actions concerning the length of his detainment (O.R. 37), but he subsequently sought to delay his trial as set forth above.

Finally, this Court agrees with the OCCA's determination that the delay in bringing Petitioner to trial did not prejudice him. In *Barker*, 407 U.S. 534, prejudice was equated with evidentiary problems caused by the delay, such as the death or unavailability of a witness. Petitioner argued on appeal that his defense was "permanently damaged" by the deaths of

witnesses "whose statements never were memorialized." (Dkt. 32-1 at 14). He has not, however, advised what the testimony of those witnesses would have been. *See Castro v. Ward*, 138 F.3d 810, 820 (10th Cir. 1998) (finding no prejudice when petitioner did not claim any specific witness or evidence was rendered unavailable or less persuasive because of the passage of time). Ground II of this habeas petition is meritless.

**Ground III: Excessive Sentence**

Petitioner alleges his 30-year sentence is excessive under the facts and circumstances of the case. Under Oklahoma law, the crime of rape by instrumentation, after former conviction of two or more prior felonies, has a punishment range of 20 years to life imprisonment (O.R. 168; OUJI-CR 10-19). *See* Okla. Stat. tit. 21, § 51.1(B) (Supp. 2002).

The OCCA denied relief on this claim:

> . . . [W]e find Webb did not receive an excessive sentence. A sentence within the statutory range will be affirmed on appeal unless, considering all the facts and circumstances, it shocks the conscience of this Court. *Rea v. State*, 34 P.3d 148, 149 n.3 (Okla. Crim. App. 2001). Webb's sentence does not shock the conscience of the Court.

*Webb*, No. F-2012-101, slip op. at 2.

This Court finds Petitioner has failed to identify any federal constitutional violation in this claim, which is the core predicate for habeas relief. *See* 28 U.S.C. § 2254(a). He has not even shown that his sentence falls outside the state statutory limits. *See Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000), *cert. denied*, 534 U.S. 887 (2001) (stating challenges to state sentencing decisions "are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law"). This claim also fails.

15

**Certificate of Appealability**

The court further finds Petitioner has failed to make a "substantial showing of the denial of a constitutional right," as required by 28 U.S.C. § 2253(c)(2). In addition, he has not shown "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether [this] court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Therefore, a certificate of appealability cannot be issued.

**ACCORDINGLY**, Petitioner's amended petition for a writ of habeas corpus is DENIED, and Petitioner is DENIED a certificate of appealability.

**IT IS SO ORDERED** this 22nd day of August 2016.

**Dated this 22nd day of August, 2016.**

Ronald A. White
United States District Judge
Eastern District of Oklahoma