# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHRISTOPHER WAYNE WEBB, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. CIV 13-265-RAW-KEW |
| ) | |
| JOE ALLBAUGH, DOC Director, ) | |
| ) | |
| Respondent. ) | |

## OPINION AND ORDER

On August 22, 2016, Petitioner's amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 was denied, and he also was denied a certificate of appealability (Dkt. 36). On September 14, 2016, Petitioner filed a motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 60(b) (Dkt. 38), a motion for appointment of counsel (Dkt. 39), a motion for recusal of the district judge (Dkt. 40), and a motion for complete record of court transcripts (Dkt. 41). Petitioner subsequently filed a notice of appeal to the Tenth Circuit Court of Appeals on September 19, 2016 (Dkt. 42). The Tenth Circuit has abated the appeal, pending a decision on the motion to alter or amend the judgment (Dkt. 49).

## Motion for Recusal/Transfer (Dkt. 40)

Petitioner's "Motion for Independent Action/Recusal of Judge/Court" (Dkt. 40), alleges the following:

> The - petitioner - moves the Hon. Court to entertain (a) [sic] independent action to relieve the petitioner from judgment; and (or) remove the Hon. Ronald A. White from any further proceedings in direct relation to the petitioner's litigation due to his failure to abide, and follow direct/clear rules

of the Federal criminal/civil procedures, his failure to remain neutral (or) objective by becoming an advocate for the state, by abusing his power/authority, by stepping outside the scope of litigation attempting to publish/write into law his own agenda to specifically deny/violate the backbone of the criminal justice system - namely - DUE PROCESS - which actions have directly/fraudulently denied the petitioner (a) final resolution of multiple claims determined on the actual merits; which has prevented justice from being done; and finally brought to (a) legally binding - due process - ending.

(Dkt. 40 at 1). Petitioner requests that this case be transferred to the Western District of Oklahoma, where he is incarcerated, "in order to protect the integrity of (all) future litigation in reference to the petitioner's due process claims." *Id.*

Petitioner's allegations against the undersigned district judge, which the Court construes as arising under 28 U.S.C. § 144 and § 455, clearly are based upon Petitioner's disagreement with prior rulings in this case. Section 144 "requires an affidavit of bias and prejudice, which must be timely, sufficient, made by a party, and accompanied by a certificate of good faith . . . ." *Glass v. Pfeffer*, 849 F.2d 1261, 1267 (10th Cir. 1988) (citing *Hinman v. Rogers*, 831 F.2d 937, 938 (10th Cir. 1987)). Petitioner, however, has failed to file the required documents.

Addressing Petitioner's claims under § 455, "factual allegations need not be taken as true, and the test is whether 'a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality.'" *Id.* at 1268 (quoting *Hinman*, 831 F.2d at 938). "In applying § 455(a), the judge's actual state of mind, purity of heart, incorruptibility, or lack of partiality are not the issue." *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995) (quoting *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993)). The standard is purely objective and the inquiry is limited to "outward manifestations and reasonable inferences

2

drawn therefrom." *Nichols*, 71 F.3d at 351; *Cooley*, 1 F.3d at 993. "The statute is not intended to give litigants a veto power over sitting judges, or as a vehicle for obtaining a judge of their choice." *Cooley*, 1 F.3d at 993; *see also Nichols*, 71 F.3d at 351.

In *Nichols*, the Tenth Circuit listed seven frequently alleged bases that usually do not warrant recusal, including "prior rulings in the proceeding, or another proceeding, solely because they were adverse . . . ." *Id.* at 351. Furthermore, the United States Supreme Court has instructed:

> [J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves (*i.e.*, apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal.

*Liteky v. United States*, 510 U.S. 540 (1994) (internal citation omitted).

Bearing in mind that "a judge has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require," *Nichols*, 71 F.3d at 351, this Court concludes Petitioner's motion for recusal or a transfer of this case to the Western District of Oklahoma (Dkt. 40) must be DENIED.

## Motion for Appointment of Counsel (Dkt. 39)

Petitioner also has filed a motion for appointment of counsel (Dkt. 39), which reiterates allegations in the motion for recusal and claims counsel should be appointed for the following reasons:

> [D]ue to the extraordinary merits of the litigant's claims, the nature of the factual issues raised in the claims - namely - fraud by the Hon. Court - and - an obvious attempt to cover-up an actual miscarriage of justice by continuing

3

to refrain from actually addressing - "The petitioner's dead bang winners on appeal" and refusing to abide by the clear rules/guidelines outlined by the Federal Criminal/Civil procedures; and most especially the Hon. Court actually becoming an advocate for the state.

(Dkt. 39).

It is unclear whether Petitioner is requesting counsel for these proceedings in the district court or for his appeal. Nevertheless, after considering Petitioner's ability to present his claims and the complexity of the legal issues raised by the claims, the Court finds that appointment of counsel is not warranted. *See Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991); *see also Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995). Therefore, the motion for appointment of counsel (Dkt. 39) is DENIED.

## Rule 60(b) Motion (Dkt. 38)

Petitioner's motion pursuant to Rule 60(b) (Dkt. 38) alleges this Court failed to address all the claims in his amended habeas corpus petition (Dkt. 21). Fed. R. Civ. P. Rule 60(b) allows relief from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). "Rule 60(b) relief 'is extraordinary and may only be granted in exceptional circumstances.'" *Zurich North America v. Matrix Service, Inc.*, 426 F.3d 1281, 1289 (10th Cir. 2005) (quoting *Servants of Paraclete v. Does*, 204 F.3d 1005, 1009 (10th Cir. 2000)). Furthermore, "[i]n a Rule 60(b) proceeding the motion is addressed to the sound discretion of the [district] court." *Caribou Four Corners v. Truck Ins. Exchange*, 443 F.2d 796, 799 (10th Cir. 1971) (citations omitted).

"A motion for relief under Rule 60(b)(1) is not a substitute for the ordinary method of redressing judicial error--appeal." *Id.* (internal quotation omitted). Rule 60(b) does not permit a party to reargue an issue by rehashing facts and arguments already addressed or available, yet neglected, in the original proceeding. *See Servants of Paraclete*, 204 F.3d at 1012; *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991). For the reasons set forth below, the Court finds Petitioner's Rule 60(b) motion (Dkt. 38) must be DENIED.

*Sufficiency of the Evidence*

Petitioner's Rule 60(b) motion challenges this Court's determination that the evidence was sufficient to convict him of Rape by Instrumentation, After Conviction of Two or More Felonies, in Bryan County District Court Case No. CF-2009-387 (Dkt. 38 at 10). He argues this Court erroneously failed to conduct a de novo review of the sufficiency of the evidence (Dkt. 38 at 6-7). This Court, however, reviewed the trial record and determined that the evidence was sufficient under the habeas review standard of *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (Dkt. 36 at 3). The record showed as follows:

A.S., the victim who was 17 years old when the trial was held in 2012, was the first witness to testify, but she was reluctant in her testimony. She was friends with some of

5

Petitioner's relatives, some of whom were listed as defense witnesses, and the prosecutor claimed A.S. had been receiving calls and text messages from Petitioner's family (Tr. 77; Dkt. 33-4 at 78). A.S. also was concerned that her testimony would cause Petitioner to go to prison for a long time (Tr. 82; Dkt. 33-4 at 83).

At trial, A.S. initially denied that Petitioner had touched her, contrary to her testimony at the preliminary hearing (Tr. 75; Dkt. 33-4 at 76). She stated she was high on the day of the preliminary hearing. *Id.* The prosecutor then reminded her of her preliminary hearing testimony:

> Q: Was there ever an incident when you woke up in a bed with [the Defendant]?
>
> A: Nope.
>
> Q: Okay. Do you recall testifying at a Preliminary Hearing?
>
> A: Yeah.
>
> Q: Do you recall at Preliminary Hearing testifying contrary to what you've just stated?
>
> A: What?
>
> Q: That's not a good way to ask that question. What did you tell us happened at Preliminary Hearing?
>
> A: I don't remember. I was high that day that I testified.
>
> Q: Okay. Were you high a lot?
>
> A: Stayed that way.
>
> Q: Okay. How long have you been doing drugs, [A.S.]?
>
> A: Five years--four years.

Q: Okay. How old were you when you started doing drugs?

A: Twelve.

Q: At Preliminary Hearing, do you recall me asking you this question about the Defendant: "Did he ever do anything that caused you to be uncomfortable?" And the answer was, "Uh-huh." Do you remember that?

A. No.

Q: Do you remember if he had ever done anything that made you feel uncomfortable?

A: No.

Q: Do you remember telling Ange Edwards, the forensic interviewer with the Department of Human Services, that he had done something that made you feel uncomfortable?

A: Yeah, I recall that.

Q: What did you tell Ange?

A: Nothing.

Q: Okay. You didn't tell her that--

A: Didn't she record me? Can't y'all listen to it?

Q: Okay. Did you--do you recall telling her that you woke up with his fingers in your vagina?

A: No.

Q: Okay. At preliminary Hearing when I asked you about the incident that made you feel uncomfortable, do you recall stating, "I stayed the night at Shannon Billey's house. I was doing dope for a few days and I guess I couldn't get no more dope. I was sleepy and finally went to sleep. When I woke up--and was on my period and I had a tampon in--and his

> fingers was in me"? Do you recall that statement?
>
> A: Yeah, I recall it.
>
> Q: Okay. Was that the truth?
>
> A: Do I have to answer that?
>
> Q: Yes, ma'am.
>
> A: Well, I don't want to.
>
> Q: Okay. Are you friends with persons that are relatives of Mr. Webb?
>
> A: Now?
>
> Q: Uh-huh.
>
> A: Yeah.
>
> Q: Okay. Like who?
>
> A: Brandy and Barbara.
>
> Q: Okay. And they are listed witnesses for the Defense, are they not?
>
> A: I guess. I don't know. I seen her downstairs.
>
> Q: So, [A.S.], did you wake up with his fingers in your vagina?
>
> A: I'm not answering that question.

(Tr. 75-77; Dkt. 33-4 at 76-78).

The Court then took a short recess (Tr. 78; Dkt. 33-4 at 79). After the recess, A.S. resumed the witness stand outside the presence of the jury, and the trial court discussed with A.S. her concerns about testifying (Tr. 81; Dkt. 33-4 at 82). When A.S. agreed to testify, the jury was returned to the courtroom (Tr. 84, Dkt. 33-4 at 85).

8

[PROSECUTOR]: [A.S.], at Preliminary Hearing you had testified that you woke up one morning with the Defendant's fingers in your vagina. Was that the truth?

A: Why do you keep asking me that?

Q: [A.S.], I don't like to repeat that question over and over, but you haven't answered my question.

A. Yeah.

Q: Okay. That was the truth, then. And did that happen when you were 14?

A. I don't remember.

Q: Would it have been that spring or summer of 2009?

A: Yeah.

Q: Okay. A.S., you had testified that you had had some drug issues and that you had been to rehab and you had just gotten out. Was that in-- when did you get out of rehab?

A: December 14.

Q: Okay. And have you done methamphetamine since then?

A: No.

Q: Okay. Are you under the--

A: I probably would be feeling a lot better if I did.

Q: Are you under the influence of anything today?

A: No.

Q: How is it that you--where did you wake up with the Defendant's fingers in your vagina?

9

A: Oh, my gosh. At Shannon's house.

Q: Okay.

(Tr. 85-86; Dkt. 33-4 at 86-87).

Other witnesses supported A.S.'s testimony, as set forth in the Court's earlier Opinion and Order (Dkt. 36 at 4-5). David Cathey, an investigator with the Bryan County District Attorney's Office, testified that A.S. disclosed the allegations against Petitioner to him and to A.S.'s mother Melissa Wright-Sanchez (Tr. 114-15; Dkt. 33-4 at 114-15). After a forensic interview of A.S. was completed, all of Ms. Wright-Sanchez's children were removed from her custody, and Wright-Sanchez was charged with knowing about the molestation (Tr. 109, 116; Dkt. 33-4 at 109, 116). Also, as discussed in the Court's previous Order, two other witnesses testified about instances when Petitioner had touched them inappropriately in a sexual manner, starting when they were 11 years old (Tr. 137-53; Dkt. 33-4 at 137-42; Dkt. 33-5 at 143-53).

The Court has carefully reviewed the evidence presented at trial. Rule 60(b) was designed to address mistakes attributable to special circumstances and not merely erroneous applications of law. *McMillan v. MBank Fort Worth, N.A.*, 4 F.3d 362, 367 (5th Cir. 1993). This Court analyzed Petitioner's claim of insufficient evidence under the correct standard of *Jackson v. Virginia*, and Petitioner has raised no special circumstances. Therefore, his challenge to the Court's decision is not proper for Rule 60(b) relief.

*Jury Instructions*

Petitioner alleges the respondent and the Court failed to address his claim that the trial court erroneously failed to instruct the jury to acquit him:

> The - petitioner - very, very, very, clearly raised the allegation/claim that the - Trial Court - erred by not giving the dutiful/requested - instructions to the jury to acquit/return (a) a verdict of - not guilty - after - the - Trial Court - judge/Hon. Campbell concluded that the evidence was insufficient to warrant/sustain (a) conviction upon motion for (a) directed verdict for insufficient evidence. . . . Once Judge Campbell concluded with [sic] the evidence produced by the State was insufficient to warrant/support (a) conviction, and even detailed why the evidence produced was insufficient the Hon. Court had no choice at that point but to instruct the jury they may acquit/return (a) verdict of non guilty - as - to do otherwise would deny/violate the petitioner's substantial - due process - rights under the 5th/14th U.S. Const. Amend., and the Oklahoma Const. under (Art, 2, § 2/Art. 2, § 7).
>
> Time after time after time the Ok. Court of Crim. Appeals has held, and ruled that it is (made) the (duty) of the (Trial Court) - when it deems/finds the evidence insufficient to warrant/support (a) conviction to advise/instruct the jury to acquit/return (a) verdict of - not guilty - due to the fact as (a) matter of law it is not only the - petitioner's - right to have the instructions given, but the duty of the (Trial Court) to give them. The trial record is very clear the - Trial Court - deemed the evidence insufficient, and then violated the petitioner's - due process - by - Failing/refusing to give the dutiful/requested instructions as (a) Matter of law. See O.S. 22-850 - which states the Trial Court may advice [sic] the jury to acquit upon (a) finding of insufficient evidence; remember - the statute doesn't state - "Maybe advise" it clearly has been interpreted by the Appellate Courts as it is - the duty - of - the (Trial Court) to give the instructions, and the right of the - petitioner - to have the instructions given - when the - Trial Court - finds/concludes/deems the evidence insufficient to warrant/support (a) conviction. . . .
>
> . . . Lets [sic] be clear - when the defense moved for (a) directed verdict due to insufficient evidence the defense definitely expected/was requesting that the instruction to acquit the petitioner be advised to the jury - after - the Hon. Court declared/found/concluded and deemed the [State's] evidence to be insufficient to warrant/support (a) conviction.

(Dkt. 38 at 1-3).

The record shows that the denial of a directed verdict was mentioned in Petitioner's direct appeal as support for his claim that the evidence was insufficient (Dkt. 32-1 at 17).

11

The appellate brief, however, did not expressly challenge the denial of a directed verdict as a separate claim concerning jury instructions. Therefore, the Court of Criminal Appeals did not specifically address the directed verdict issue in its analysis of the sufficiency of the evidence. *Webb v. State*, No. F-2012, slip op. at 2 (Okla. Crim. App. May 3, 2013) (Dkt. 32-3 at 2).

The trial transcript shows the following exchange after the final witness testified and the jury left the courtroom:

> THE COURT: Anything we need to take up, before we recess, by the State?
>
> MS. NAIFEH: Not by the State, Your Honor.
>
> THE COURT: By the Defendant--anything we need to take up by the Defendant before we recess since the jury has left the courtroom?
>
> MS. KERR: Your Honor, we would just simply have a motion for a directed verdict. And we would ask that you find the Defendant not guilty on the basis of the evidence that has been presented so far.
>
> [A.S.'s] testimony is really--the other testimony, obviously, is somewhat relevant, but the question really comes down to [A.S.'s] testimony. And I don't believe it was strong enough to support a conviction beyond a reasonable doubt at this point in time.
>
> THE COURT: Certainly if the jury were to believe her testimony beyond a reasonable doubt it wouldn't support a conviction. And it hasn't been corroborated by other evidence, so the Motion for a Directed Verdict and/or a Motion of Acquittal is denied, exception allowed.

(Tr. 170-71; Dkt. 33-5 at 28-29).

This Court notes the apparent inconsistency between the trial court's statement that the victim's uncorroborated testimony would not support a conviction, if the jury believed her beyond a reasonable doubt, and that court's denial of the motion for a directed verdict.

12

Pursuant to Okla. Stat. tit. 22, § 850, the trial court was not required to grant the motion for a directed verdict. Section 850 states that "[i]f, at any time after the evidence on either side is closed, the court deem it insufficient to warrant a conviction, it *may* advise the jury to acquit the defendant. But the jury are not bound by the advice, nor can the court, for any cause, prevent the jury from giving a verdict" (emphasis added). Petitioner's characterization of the statue is incorrect.

Furthermore, even if the trial court's denial of the directed verdict had violated § 850, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citing 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1995) (per curium)).

"[T]he burden on a petitioner attacking a state court judgment based on a refusal to give a requested jury instruction is especially great because an omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Tyler v. Nelson*, 163 F.3d 1222, 1227 (10th Cir. 1999) (quotations omitted). "Unless the constitution mandates a jury instruction be given, a habeas petitioner must show that, in the context of the entire trial, the error in the instruction was so fundamentally unfair as to deny the petitioner due process." *Tiger v. Workman*, 445 F.3d 1265, 1267 (10th Cir. 2006) (citations omitted).

Here, the Court finds Petitioner was not denied due process. Under Okla. Stat. tit. 22, § 850, the trial court had discretion in directing a verdict of acquittal, which that court exercised. There was no constitutional error in the trial court's denial of Petitioner's motion

for a directed verdict. *See Barber v. Jones*, No. CIV 06-1260-W, 2007 WL 2029000, at *7 (W.D. Okla. July 10, 2007) (unpublished) (holding that the trial court did not commit a constitutional violation through the denial of a motion for a directed verdict, when sufficient evidence supported the conviction). This claim has no merit.

*Prosecutorial Misconduct*

Under the heading of insufficient evidence, Petitioner claims the prosecutor committed misconduct with respect to A.S.'s testimony:

> The - petitioner very, very, very, clearly raised the claim/allegation that the prosecutor (Julie Nafieh) improperly vouched for the credibility of the prosecutrix by personally assuring the jury of the witness's credibility, and by expressing her personal opinion regarding the petitioner's guilt when stating in her closing argument to the jury - "All A.S. had to do was say (NO) deny the allegation, and we could've all went home." Knowing beforehand (just prior) to taking the stand that A.S. had been threatened, and assaulted by (D.A.) investigator - David M. Cathey - along with the fact the prosecutor "conveniently" witheld [sic] A.S.['s] certificate to avoid prosecution herself until - after - her testimony.

(Dkt. 38 at 8-9).

Petitioner claims the prosecutor obtained A.S.'s testimony by threat and coercion. A.S. testified that Investigator Cathey told her she would go to jail or "have very bad consequences," if she failed to show up for the trial (Tr. 91; Dkt. 33-4 at 92). She said she also heard that if she didn't appear for trial, her mother would get a longer prison sentence. *Id.* In addition, shortly before entering the courtroom, A.S. was texting on her phone, and Investigator Cathey decided to take the phone from her. *Id.* A.S. testified that she would not let Cathey have her phone, so he threw her to the ground and handcuffed her, slamming her face against the floor (Tr. 91-92; Dkt. 33-4 at 92-93).

14

During the break in A.S.'s testimony and outside the presence of the jury, the trial judge spoke to A.S. about her being "very scared and worried" (Tr. 83; Dkt. 33-4 at 84). A.S. claimed the District Attorney's investigator told her she "was going to go to jail or something," because she did not want to testify. *Id.* The judge assured A.S. that she could not be jailed, because she was a child. *Id.* The judge said that if she refused to testify, the prosecutor could ask to have A.S.'s preliminary hearing testimony read into the record (Tr. 83-84; Dkt. 33-4 at 84-85). The judge then told A.S. that "all anybody wants you to do is just tell the truth" (Tr. 84; Dkt. 33-4 at 85). After hearing that statement, A.S. agreed to testify. *Id.* At the conclusion of her testimony, A.S. requested her "certificate," and the prosecutor said "Okay." (Tr. 94, Dkt. 33-4 at 95).

The Court finds these claims by Petitioner were not raised in his direct appeal, so they are unexhausted and subject to a procedural bar. Petitioner also has failed to show cause and prejudice for the omission of these claims on direct appeal.

The Court further finds that Petitioner's claim that the prosecutor vouched for A.S.'s credibility is not supported by the record. This claim also is unexhausted and subject to a procedural bar. In the State's closing argument, the prosecutor stated as follows:

> One of the instructions talks about "Credibility of Witnesses." If we could go and pick all honor students and all good church-going people, employed people, kids with no problems, kids with no issues to come in here and be my witnesses, I'd do that.
>
> But during voir dire, we talked about just because [A.S.] has problems and has had a rough life, does that mean that somebody should get away with hurting her or perpetrating on her, and I believe the answer from all of you was no, they should still be held accountable. Who has reasons to make things up and lie? [A.S.]? I mean, she could have said, "It never happened," and we would be done, but she's been here time and again to testify and has told the same

15

thing.

(Tr. 205-06; Dkt. 33-5 at 63-64).

"Argument or evidence is impermissible vouching only if the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony." *United States v. Magallanez*, 408 F.3d 672, 680 (10th Cir.2005) (internal quotation marks omitted). "[I]t is not improper for a prosecutor to direct the jury's attention to evidence that tends to enhance or diminish a witness's credibility." *Thornburg v. Mullin*, 422 F.3d 1113, 1132 (10th Cir. 2005). Here, the Court finds the prosecutor's statements did not "so [infect] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). There is no basis for Rule 60(b) relief on Petitioner's claim of prosecutorial misconduct.

### *Victim's Testimony*

Petitioner alleges the Court overlooked his claim that A.S.'s testimony was not clear and convincing and corroborated (Dkt. 38 at 9). This claim was not overlooked, but was considered as part of Petitioner's claim regarding sufficiency of the evidence.

This Court expressly found that A.S.'s testimony "satisfied the elements of the crime" (Dkt. 36 at 7). Furthermore, the Tenth Circuit Court of Appeals has stated that "[n]o direct Supreme Court precedent requires corroboration of child witness testimony." *Parker v. Scott*, 394 F.3d 1302, 1314 (10th Cir. 2005). In *Cooper v. State*, 568 P.2d 1300 (Okla. Crim. App. 1977), the Oklahoma Court of Criminal Appeals held that a rape conviction may be

based on uncorroborated, clear and convincing testimony by the prosecutrix. *Id.* at 1302-03. *See also Binder v. State*, 717 P.2d 1143, 1145 (Okla. Crim. App. 1986), *cert. denied*, 479 U.S. 858 (1986). To be found insufficient under Oklahoma law, Petitioner must show the victim's uncorroborated testimony was "contradictory, uncertain, improbable, or impeached." *Holding v. State*, 568 P.2d 332, 334 (Okla. Crim. App. 1977). *See also Hurl v. State*, 674 P.2d 581, 583 (Okla. Crim. App. 1984). Petitioner did not make this showing.

***Procedural Bar***

Petitioner also complains that "the Hon. Court took it upon itself to advocate for the State whats [sic] exhausted (or) not exhausted . . . [and] opened the door to yet another (Rule) violation which clearly prevents Federal Courts from considering 'mixed petitions.'" (Dkt. 38 at 13-14). To the contrary, the respondent alleged in his response to the amended petition that Petitioner's vague claims were unexhausted and subject to an anticipatory bar. (Dkt. 32 at 10-12).

## Motion for Complete Record of Court Transcripts (Dkt. 41)

Finally, Petitioner asks the Court to provide him with all the state court records filed in this case, so he can prepare his Rule 60(b) motion and his pleadings for the Tenth Circuit Court of Appeals (Dkt. 41). Petitioner filed this motion for state court records on the same day he filed his Rule 60(b) motion, so he had completed his Rule 60(b) motion prior to asking the Court to provide the state court records. To the extent Petitioner claims to need the records for his appellate proceedings, "indigent prisoners do not have a right to free transcripts to conduct fishing expeditions in search of error in the underlying proceedings." *United States v. Bagby*, No. 10-CR-134-CVE, 2011 WL 810709 (N.D. Okla. Mar. 1, 2011)

(unpublished). This motion (Dkt. 41) is DENIED.

**ACCORDINGLY,** Petitioner's motion for recusal of the district judge (Dkt. 40) is DENIED, Petitioner's motion for appointment of counsel (Dkt. 39) is DENIED, Petitioner's motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 60(b) (Dkt. 38) is DENIED, and Petitioner's motion for complete record of court transcripts (Dkt. 41) is DENIED.

**IT IS SO ORDERED** this 20 day of January 2017.

**RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**